So Ordered.

Dated: January 15, 2026



G. Michael Halfenger
United States Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF WISCONSIN

In re:

David Olson and Stephanie Olson,    Case No. 25-21293-gmh

    Debtors.    Chapter 7

Tamara Moodie,

    Plaintiff,

v.    Adv. Proc. No. 25-02090-gmh

David Olson,

    Defendant.

**OPINION AND ORDER DENYING DEFENDANT'S
MOTION TO DISMISS**

Plaintiff Tamara Moodie filed an adversary complaint against debtor-defendant

David Olson, requesting a declaratory judgment that Olson owes her a debt that is not dischargeable, either pursuant to Bankrputcy Code §523(a)(2)(A), because it was obtained by fraud, or §523(a)(4), because it is for defalcation while acting in a fiduciary capacity. 11 U.S.C. §523(a)(2) & (4). Olson moved to dismiss the complaint for failing to state a claim upon which relief can be granted. ECF Nos. 6 & 7; *see* Fed. R. Civ. P. 12(b)(6) (Fed. R. Bankr. P. 7012). In response, Moodie amended her complaint. ECF No. 9. Olson now concedes that the amended complaint adequately alleges a claim for nondischargeability under §523(a)(2) but continues to assert that, even as amended, the complaint fails to state a claim for nondischageability under §523(a)(4). ECF Nos. 12 & 14.

I

A

To state a claim for relief, an adversary complaint "must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief". Fed. R. Civ. P. 8(a)(2); Fed. R. Bankr. P. 7008. This "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). "To survive a motion to dismiss" asserting a failure to satisfy this standard, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Twombly*, 550 U.S. at 570). A complaint states a facially plausible claim when it contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Allegations of fraud require more detail: The pleading must "state with particularity the circumstances constituting fraud", though "[m]alice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b); Fed. R. Bankr. P. 7009.

B

The amended complaint alleges the following facts, which, for purposes of ruling on Olson's motion to dismiss, the court presumes are true. *Twombly*, 550 U.S. at 555–56; *Iqbal*, 556 U.S. at 678.

Olson and his wife own Olson Builders, Inc. ECF No. 9, at 1. After meeting with Olson in November 2022, Moodie hired Olson Builders to build her a house. Olson told Moodie he could build the house for between $300 to $350 thousand, could start construction in four to six weeks, "depending on the frost," and would guaranty his work for a year. *Id.* at 2. The estimate was a lie: "he knew in 2022 there was no way he could build the requested house for between $300,000 – $350,000." *Id.*

In April 2023 Moodie paid Olson a $140 thousand "down payment of one-half of the construction price" to start building. *Id.* Olson began construction in late April 2023. In June 2023 Olson requested a payment of an additional $160 thousand to pay construction costs and told Moodie "that the house would be completed by the beginning of August". *Id.* Near the end of June Olson provided Moodie with a written contract for the first time, reporting a construction cost of $556 thousand. *Id.* Shocked, Moodie questioned the contract's scope, after which Olson provided a second contact stating a cost of $500 thousand. *Id.* at 3. Olson then told Moodie, who had just sold her prior house, that if she didn't sign the second contract, he'd stop construction. *Id*. Feeling pressured, Moodie signed. *Id*. In August 2023 Olson asked for another $50 thousand and a few weeks later told Moodie he needed $20 thousand more. Moodie promptly paid both. *Id*. Olson completed the project in October, but when Moodie moved in she found Olson's work subpar and not in conformity with the contract. These allegations form the basis of Moodie's claim that Olson owes her a debt for fraud that is not discharged by operation of §523(a)(2). Again, Olson does not seek dismissal of this claim.

Moodie makes additional allegations to support her claim under §523(a)(4). She

alleges that "Olson Builders, Inc., which David Olson co-owned with his wife[,] Stephanie, had a single bank account held by Horicon State Bank." *Id*. at 4. Olson deposited Moodie's payments into that account when Olson Builders did not have other work in progress. *Id*. at 4–5. "Olson", Moodie alleges, "knew of the requirements of the Wisconsin construction lien law that all money paid to Olson by Moodie for the home construction work constituted a trust fund". *Id.* at 4. Even so, the Olsons used the Olson Builders' bank account to pay their "personal bills, including groceries, mortgage, and orders from Amazon." *Id*. at 5. Moreover, Olson's "use of Moodie's construction deposit funds . . . for personal uses occurred without Moodie's consent, contrary to [his] authority, and with an intent to convert the funds for his own use and for his own purposes." *Id*. at 5. Olson's use of Moodie's funds for purposes other than her construction project was a "taking of [ ] trust fund money" that resulted in Moodie having to pay subcontractors more than $23,000. *Id*.

## II

### A

Moodie's §523(a)(4) claim first requires her to plead the existence of a debt, i.e., that Moodie has a claim against Olson. See 11 U.S.C. §§101(5) (defining "claim" as "a right to payment, whether or not such right is . . . liquidated[ or] unliquidated"), 101(12) ("The term 'debt' means liability on a claim"), & 523(a)(4) (excepting from an individual debtor's chapter 7 discharge "any debt . . . for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny"). Moodie alleges for purposes of her §523(a)(4) claim that Olson owes her an unliquidated debt for theft by contractor under Wisconsin Statutes §779.02(5).[1]

---

1. As relevant here, section 779.02(5) provides that:

   [A]ll moneys paid to any prime contractor . . . by any owner for improvements, constitute a trust fund only in the hands of the prime contractor . . . to the amount of all claims due

A theft by contractor claim under Wis. Stat. §779.02(5) requires Moodie to prove: (1) Olson entered into an agreement with her to construct a home; (2) Moodie paid Olson money to construct the home; (3) Olson "intentionally used part or all of the money for purposes other than the payment of bona fide claims due or to become due for labor or materials used in the improvements prior to the payment of such claims"; (4) Olson's "use of the money was without [Moodie's] consent . . . and contrary to [Olson's] authority"; and (5) Moodie "suffered a monetary loss as a result of [Olson's] use of the money." *Soria*, 2019 WI App 48, at ¶ 39 (citing to WIS JI–CIVIL 2722); see also *Ruck v. McGill (In re McGill)*, 653 B.R. 904, 906–07 (Bankr. E.D. Wis. 2023).

Moodie also asserts that she is entitled to treble damages and attorneys' fees under Wis. Stat. §895.446 for Olson's theft by contractor under §779.02(5). ECF No. 9, at 5. Section 779.02(5) provides that misappropriating funds in violation of that subsection is punishable as criminal theft under §943.20, and §895.446 provides, in relevant part, that one "who suffers damage or loss by reason of intentional conduct . . . that is prohibited under . . . [§]943.20 . . . has a cause of action against the person who caused the damage or loss" for "[a]ctual damages", "[e]xemplary damages of not more than

---

or to become due or owing from the prime contractor . . . for labor, services, materials, plans, and specifications used for the improvements, until all the claims have been paid . . . . The use of any such moneys by any prime contractor . . . for any other purpose until all claims . . . have been paid in full or proportionally in cases of a deficiency, is theft by the prime contractor . . . of moneys so misappropriated and is punishable under s. 943.20. If the prime contractor or subcontractor is a corporation, limited liability company, or other legal entity other than a sole proprietorship, such misappropriation also shall be deemed theft by any officers, directors, members, partners, or agents responsible for the misappropriation. . . . Except as provided in this subsection, this section does not create a civil cause of action against any person other than the prime contractor . . . to whom such moneys are paid.

Wis. Stat. §779.02(5); see also *Soria v. Classic Custom Homes of Waunakee, Inc.*, 2019 WI App 48, ¶ 38, 2019 WL 3022365, *7 (Wis. Ct. App. July 11, 2019) (unpublished decision) ("Wisconsin's civil theft by contractor statute, WIS. STAT. § 779.02(5), safeguards against misappropriation of construction project funds by providing that funds paid to a contractor by a property owner for improvements to that property constitute a trust for the benefit of owners, subcontractors, and suppliers of materials." (quotation omitted) (footnote omitted)).

[three] times the amount [of actual damages] awarded", and "[a]ll costs of investigation and litigation that were reasonably incurred" by the plaintiff. Wis. Stat. §895.446(1) & (3). A theft-by-contractor civil plaintiff is entitled to exemplary damages under §895.446 only if she proves "the elements of both the civil *and* the criminal statutes . . . Stated differently, the basis of liability for criminal theft by contractor is a violation of the trust funds provisions of Wis. Stat. § 779.02(5), plus the criminal intent required by Wis. Stat. § 943.20(1)(b)." *Tri-Tech Corp. of Am. v. Americomp Servs., Inc.*, 646 N.W.2d 822, 828 (Wis. 2002).[2] To prove the criminal intent required by §943.20(1)(b), a plaintiff must show "that the defendant knowingly retained, concealed, or used contractor trust funds without the owner's consent, contrary to his authority, and with intent to convert such funds to his own use or the use of another." *Id.* at 829.

1

Olson asserts that Moodie is required to plead her underlying claims under Wis. Stat. §§779.02(5) and 895.446 with particularity under Rule 9. But, as illustrated above, neither fraud nor misrepresentation is a necessary element of those claims.

In making his argument that Moodie must plead fraud, Olson states, "The criminal theft statute invoked by Plaintiff requires that a defendant 'Obtains title to property of another person by intentionally deceiving the person with a false

---

2. *Tri-Tech* explains:

> By its terms, Wis. Stat. § 779.02(5) makes misappropriation of contractor trust funds punishable as a theft under Wis. Stat. § 943.20. Wisconsin Statute § 895.80 [now Wis. Stat. §895.446], which provides a civil treble damages remedy to victims of certain intentional property crimes, includes Wis. Stat. § 943.20 as one of the predicate criminal offenses for which the remedy is available. The elements of criminal theft by contractor under Wis. Stat. §§ 943.20(1)(b) and 779.02(5) include specific criminal intent, to-wit, that the defendant knowingly retained possession of or used contractor trust funds without the owner's consent, contrary to his authority, and with intent to convert such funds for his own use or the use of another.

*Tri-Tech*, 646 N.W.2d at 824 (citing to Wis. Stat. §895.80, which was renumbered to Wis. Stat. §895.446 and had its title amended by 2005 Act 155, §70, eff. Apr. 5, 2006).

representation which is known to be false, made with intent to defraud, which does defraud the person to whom it is made.'" ECF No. 7, at 7 (quoting Wis. Stat. §943.20(1)(d)). But Moodie does not allege theft by deception under §943.20(1)(d) nor is she required to do so. Section 779.02(5) explicitly provides that theft by contractor "is punishable under [§] 943.20" and the specific provision of §943.20 applicable to theft-by-contractor, as *Tri-Tech* notes, is §943.20(1)(***b***), ***not*** §943.20(1)(***d***), the subsection on which Olson relies in contending that Moodie must plead fraud. 646 N.W.2d at 824, 828–29. Section 943.20(1)(b), the elements of which Moodie must establish to recover exemplary damages under §895.446, ***does not*** require proof of fraud or misrepresentation—it requires Moodie to prove, as noted above, the civil elements required by §779.02(5), *plus* proof "that the defendant knowingly retained, concealed, or used contractor trust funds without the owner's consent, contrary to his authority, and with intent to convert such funds to his own use or the use of another." *Tri-Tech*, 646 N.W.2d at 829.

    Moodie's theft-by-contractor-based §523(a)(4) claim is thus not based on allegations that Olson defrauded her, deceived her, or obtained her funds through misrepresentations. Moodie *does* allege that Olson defrauded her, but that is the alleged basis of her §523(a)(2) claim—a claim that Olson does not challenge as inadequately pleaded—*not* her §523(a)(4) claim. Her claim for relief under §523(a)(4) is based on allegations that Olson—a Wisconsin builder who took her funds to construct a house for her—used Moodie's funds in violation of the trust imposed by Wis. Stat. §779.02(5) knowing that he was prohibited from doing so or willfully blind to the statutory prohibition on that use, ***not*** that he made false statements while acting as a fiduciary. Rule 9's heightened pleading requirement does not apply. *Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502, 507 (7th Cir. 2007) ("Rule 9(b) applies to 'averments of fraud,' not claims of fraud, so whether the rule applies will depend on the plaintiffs' factual allegations." (quoting Fed. R. Civ. P. 9(b))).

2

Olson also argues that the amended complaint does not plead facts that plausibly establish a right to damages under Wis. Stat. §779.02(5), thus the "debt" component of Moodie's §523(a)(4) claim. Olson argues that Moodie fails to link her losses to a breach of fiduciary duty, contending that one cannot reasonably infer from her allegation that she had to pay $23 thousand directly to subcontractors that Olson used her funds for his own purposes. Olson supposes that the subcontractors may have gone unpaid because Moodie failed "to pay [Olson] the remaining $130,000 of the $500,000 contract price". ECF No. 14, at 4. He argues that the amended complaint "fails to allege that [he] used the funds received from [Moodie] for anything other than the costs of the project", thus failing "to make the factual connection between [Moodie's] funds deposited in the construction company's bank account and the use of the funds to pay [Olson's] personal expenses." *Id*. at 5.

But in this Olson gives the amended complaint short shrift. The complaint alleges that Moodie hired Olson to construct a house; she paid him $370 thousand in a series of payments made over a five-month period; during that time, Moodie's project was Olson Builders' only project; Olson deposited Moodie's funds into Olson Builders' bank, which Stephanie Olson testified the Olsons also used to pay their personal bills; ***and*** Olson transferred Moodie's funds with an intent to convert those funds for his own purposes, without Moodie's consent and contrary to his authority, ultimately causing Moodie to suffer actual damages, including payments of over $23 thousand to subcontractors. ECF No. 9, at 2–5. These allegations are sufficient to plead that Moodie has a right to damages from Olson under Wis. Stat. §§779.02(5) and 895.446, thus, a debt for purposes of §523(a)(4) of the Bankruptcy Code.

B

In addition to pleading a right to damages for theft-by-contractor, Moodie must also plausibly plead that the alleged theft-by-contractor debt is not dischargeable by

operation of §523(a)(4) because it is for defalcation by a fiduciary. *BCL-Home Rehab LLC v. Fixler (In re Fixler)*, No. 19 B 36659, 2022 WL 2903356, at *6–8 (Bankr. N.D. Ill. July 22, 2022) (To adequately plead her §523(a)(4) claim, one must plausibly "allege (1) that the debtor acted as a fiduciary to the creditor when the debt was created, and (2) that the debt was caused by fraud or defalcation." (first citing *Estate of Cora v. Jahrling (In re Jahrling)*, 816 F.3d 921, 925 (7th Cir. 2016), and then citing *Follett Higher Educ. Grp., Inc. v. Berman (In re Berman)*, 629 F.3d 761, 766 (7th Cir. 2011))). Whether a debtor acts as a fiduciary for purposes of §523(a)(4) is a federal-law question and encompasses "only 'a subset' of fiduciary obligations" recognized by federal and state law. *Berman*, 629 F.3d at 768 (quoting *In re Woldman*, 92 F.3d 546, 547 (7th Cir. 1996)). But precedent holds that the fiduciary obligation imposed by Wis. Stat. §779.02(5) affords a sufficient basis for finding that the debtor acted as a fiduciary for purposes of §523(a)(4). *Stoughton Lumber Co., Inc. v. Sveum*, 787 F.3d 1174, 1177 (7th Cir. 2015). And, as explained above, Moodie has adequately alleged a theft-by-contractor claim; thus, she has adequately alleged that Olson acted as a fiduciary when that claim arose.

Moodie's amended complaint also adequately pleads a debt caused by defalcation. "'Defalcation,' as commonly used . . . can encompass a breach of fiduciary obligation that involves neither conversion, nor taking and carrying away another's property, nor falsity." *Bullock v. BankChampaign, N.A.*, 569 U.S. 267, 275 (2013); see also *Stoughton Lumber*, 787 F.3d at 1176 ("'Defalcation' refers to the misappropriation of funds entrusted to one—a form of embezzlement. It differs from fraud in not requiring a false statement."). Defalcation "requires an intentional wrong", including "as intentional not only conduct that the fiduciary knows is improper but also reckless conduct of the kind that the criminal law often treats as the equivalent." *Bullock*, 569 U.S. at 273–74.

As discussed above, Moodie pleads a §523(a)(4) claim based on Olson having misused funds Moodie tendered in trust for use on her project, either knowing that

doing so violated his fiduciary duty or grossly deviating "'from the standard of conduct that a law-abiding person would observe in [his] situation.'" *Bullock*, 569 U.S. at 274 (quoting ALI, Model Penal Code §2.02(2)(c), at 226). The amended complaint plausibly pleads that Olson knew that Wisconsin law required him to hold the funds in trust, that he "acted in a fiduciary capacity and as a fiduciary of the trust fund money which was to be solely used for the home construction work agreed upon with Moodie", ECF No. 9, at 4, that Olson deposited Moodie's funds into Olson Builders' bank account, and then used those funds for personal purposes without Moodie's consent and with an intent to convert them to his own use, contrary to his authority, causing her to suffer actual damages, including payments of over $23 thousand to subcontractors. ECF No. 9, at 4–5; see also *Crescent Electric Supply Co. v. Coates Electric LLC*, No. 18-CV-1920, 2019 WL 2234049, at *2 (E.D. Wis. May 23, 2019) ("The theft-by-contractor statute under which Crescent alleges its claim, Wis. Stat. § 779.02(5), is part of the Wisconsin Construction Lien Law." (citing *Kraemer Bros. v. Pulaski State Bank*, 406 N.W.2d 379, 381 (Wis. 1987)). These allegations state a plausible §523(a)(4) defalcation claim: They allege (1) Olson operated as a Wisconsin home contractor and knew that Wisconsin law imposed a trust on all funds received from Moodie "to be solely used for the home construction work"; (2) Olson knew he owed Moodie this fiduciary duty; (3) Olson breached his fiduciary duty as trustee of those funds by using them to pay personal expenses; and (4) Olson acted with "an intent to convert the funds to his own use and for his own purposes", thus implying that he knowingly violated the fiduciary duty imposed by Wisconsin law. ECF No. 9, at 4–5; see also Fed. R. Civ. P. 9(b) ("Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally.").

      Olson contends that Rule 9 requires Moodie to plead acts of defalcation—presumably specifics about Olson's use of Moodie's funds to his own ends—with particularity and that her complaint fails to do so in connection with the §523(a)(4) claim. But, for the reasons stated earlier, Rule 9's heightened pleading requirement does

not apply to the complaint's allegations underlying Moodie's defalcation claim—a claim that is premised on Olson's alleged use of her funds in violation of his fiduciary duties, *not* on allegations of fraud or misrepresentation. See *Bullock* 569 U.S. at 275; see also *Stoughton Lumber*, 787 F.3d at 1176. The amended complaint thus plausibly alleges facts that, if proven, establish that Olson injured Moodie by violating his fiduciary duty to use her funds only for purposes of her project.

Contrary to Olson's argument, Moodie's allegations do not need to foreclose the possibility that Olson could prevail by, for example, showing that he spent the full amount he received from Moodie on subcontractors and materials for her project and that Olson Builders' account had sufficient funds from other sources to pay his personal expenses. See ECF No. 14, at 5 (Olson argues that the amended complaint "assumes that all funds in the construction company's bank account were from the Plaintiff's project so that any amounts from the account that were spent on personal expenses during the time of the project were necessarily from funds paid by Plaintiff. . . . Rather, it is reasonable to infer the opposite, that the construction company had other funds in the account from earlier projects."). Moodie's allegation that Olson deposited customer funds into the Olson Builders' account and that Stephanie Olson testified that the Olsons then paid personal expenses from that account substantially supports an inference that Olson violated his fiduciary duty to Moodie. Olson's suggestion that perhaps Olson Brothers used Moodie's entire $370 thousand on expenses for her project and paid the Olsons' personal expenses out of other funds is a matter to be considered in a dispositive motion or at trial, not a motion to dismiss.

III

For the reasons stated above, IT IS HEREBY ORDERED that Olson's motion to dismiss Moodie's amended complaint, specifically to dismiss her claim that Olson owes her a debt excepted from discharge by §523(a)(4), is denied.

# # # # #